UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TALENTBURST, INC.,

Plaintiff,

v.

COLLABERA INC. (f/k/a GLOBAL
CONSULTANTS, INC.),

Defendant.

Civil Action No. 1:08-cv-10940-WGY

## DEFENDANT'S MEMORANDUM IN SUPPORT
## OF MOTION TO DISMISS

COMES NOW Collabera Inc. ("Defendant" or "Collabera"), by and through its

undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and

submits its Memorandum In Support Of Motion To Dismiss as follows:

### I. INTRODUCTION

Plaintiff filed its Complaint on or about May 15, 2008, against Defendant alleging causes

of action for breach of fiduciary duty (Count I), tortious interference with contractual and

advantageous relations (Count II), and violation of G.L. Chapter 93A, § 11 (Count III).

(Compl. ¶ 1.) Defendant timely removed the case to this Court on June 3, 2008. Defendant

seeks dismissal of Count I, Count II and Count III of the Complaint on the grounds that Plaintiff

has failed to allege facts upon which relief may be granted.

### II. LEGAL ARGUMENT

The Federal Rules of Civil Procedure recognize that a party may file a motion to dismiss

asserting as a defense a plaintiff's failure to state a claim upon which relief can be granted against

the defendant. Fed. R. Civ. P. p. 12(b)(6). Defendant moves this Court, pursuant to

Rule 12(b)(6), for an order dismissing Count I of the Complaint on the grounds that there was no

fiduciary relationship between the parties; Count II of the Complaint on the grounds that Plaintiff

has failed to pleads facts to support the first and third elements of a tortious interference claim;

and Count III of the Complaint on the grounds that G.L. Chapter 93A, § 11 is not applicable in

the employment context.  Defendant will address each count separately below.

**A.**     **Count I – Breach of Fiduciary Duty**

The law is well established in Massachusetts that business relationships or arm's length

transactions do not in general rise to the level of a fiduciary relationship. *See Savoy v. White,*

139 F.R.D. 265, 267 (D. Mass. 1991) (citing *McIntyre v. Okurowski,* 717 F. Supp. 10, 11

(D. Mass. 1989)).  Massachusetts courts have recognized that a fiduciary relationship may occur

by virtue of a longstanding relationship where one party reposes confidence upon another and

that confidence is abused or taken advantage of by the other party. *See Warsofsky v. Sherman,*

326 Mass. 290, 93 N.E.2d 612, 615 (1950).  Merely reposing trust on another party is insufficient

to create a fiduciary relationship.  "Plaintiff, however, merely by imposing trust and confidence

in defendants, cannot transform a relationship into a fiduciary one." *Savoy,* 139 F.R.D. at 267

(citing *Superior Glass v. First Bristol County Nat'l Bank,* 380 Mass. 829, 406 N.E.2d 672, 674

(1980)); *Industrial General Corporation v. Sequoia Pacific Sys. Corp.,* 44 F.3d 40, 44 (1st Cir.

1995).  The Restatement (Second) of Torts recognizes that a fiduciary relationship exists

between two persons when "one of them is under a duty to act for or to give advice for the

benefit of another upon matters within the scope of the relationship." Restatement (Second) of

Torts § 874.

The burden is on the party asserting the fiduciary relationship to prove its existence.

*Fleet Nat'l Bank v. H & D Entertainment, Inc.,* 926 F. Supp. 226, 242 (D. Mass. 1996), *aff'd,* 96

2

F.3d 532 (1st Cir. 1996)).  Plaintiff fails to allege any facts in the Complaint to support a

fiduciary relationship existed between Plaintiff and Defendant.  Viewing the evidence in the light

most favorable to Plaintiff, the only conclusion that can be reached is that Plaintiff and

Defendant entered into an arm's length transaction whereby Plaintiff would supply employees to

Defendant to be placed on project sites with Defendant's end clients.  (Compl. ¶¶ 8, 9.)

Paragraph 8 of the Complaint states as follows:

> On or about March 28, 2006, TalentBurst and Defendant entered
> into a Consulting Services Agreement, under which one or more
> TalentBurst employees would be assigned to perform work for
> Defendant's clients.

(Compl. ¶ 8.)  Plaintiff fails to allege any facts in the Complaint to support the finding of a

fiduciary relationship between the parties.  There is no allegation that Defendant was under any

duty to act for or give advice to Plaintiff.  There is further no allegation of a long standing

relationship between the parties.  The Complaint merely alleges that Plaintiff and Defendant

entered into a contractual relationship whereby Plaintiff would provide employees to Defendant

pursuant to the terms of a Consulting Services Agreement.  (Compl. ¶¶8, 9.)  Plaintiff has not

even attached a copy of the Consulting Services Agreement to the Complaint.  The relationship

between Plaintiff and Defendant was nothing more than an arm's length business transaction, and

as such, no fiduciary relationship exists between Plaintiff and Defendant.

In *KBQ, Inc. v. E.I. DuPont De Nemours and Company*, 6 F. Supp.2d 94 (D. Mass 1998),

the district court considered claims stemming from the termination of a franchise agreement,

including allegations of breach of fiduciary duty.  The district court noted that a disparity in

bargaining power alone will not suffice to create a fiduciary obligation flowing to the party with

superior bargaining strength.  *Id.* at 100.  The district court further noted:

3

> Typically, fiduciary obligations inhere where one party has a voice
> in the management of the affairs of another, where two entities are
> engaged in a joint venture where they share profits and risks, or
> where the entities jointly own or control assets.

*Id.* (citing *Coca-Cola Bottling Co., v. Coca-Cola Co.,* 696 F. Supp. 57, 74 (D. Del. 1988)).

There is no allegation in the Complaint that Defendant had superior bargaining strength with respect to the Consulting Services Agreement entered between the parties. Moreover, there are no allegations in the Complaint that Defendant had a voice in the management of the affairs of Plaintiff or that Plaintiff and Defendant jointly owned or controlled assets. The evidence is clear that Defendant did not owe any fiduciary obligation to Plaintiff. *See McIntyre,* 717 F. Supp. at 11 (simple stockbroker/customer relationship does not constitute a fiduciary relationship.)

A close reading of the Complaint illustrates that Plaintiff does not even allege a fiduciary relationship existed between Plaintiff and Defendant. Plaintiff's actual claim is that Defendant allegedly had a supporting role in assisting Mr. Pallerla in breaching *his* contractual obligations and duty of loyalty that *he* owed to Plaintiff. (Compl. ¶ 24.) Nowhere in Count I does Plaintiff allege that Defendant violated any fiduciary duty *it* owed to Plaintiff. (Compl. ¶ ¶ 23-26.) Plaintiff cannot recover on its breach of fiduciary duty claim without first establishing that a fiduciary relationship existed between Plaintiff and Defendant. Plaintiff has failed to meet its burden of proof.

Plaintiff has failed to allege facts to establish that a fiduciary relationship existed between Plaintiff and Defendant. Therefore, Plaintiff cannot recover on its claim for breach of fiduciary duty against Defendant as a matter of law. For this reason, Defendant is entitled to dismissal of Count I of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B.      Count II – Tortious Interference With Contractual and Advantageous Relations**

Defendant also moves for dismissal of Plaintiff's second cause of action for intentional

interference with contractual relations and advantageous relations on the grounds that Plaintiff

fails to state a claim upon which relief can be granted.

> In an action for intentional interference with contractual relations, the
> plaintiff must prove that:  (1) he had a contract with a third party;  (2) the
> defendant knowingly induced the third party to break that contract;  (3) the
> defendant's interference, in addition to being intentional, was improper in
> motive or means;  and (4) the plaintiff was harmed by the defendant's
> actions.

*Network Sys. Architects Corp. v. Dimitruk,* No. 06-4717- BLS2, 2007 WL 4442349 *9 (Mass.

Super. Dec. 6, 2007) (quoting *Wright v. Shriners Hosp. for Crippled Children,* 412 Mass. 469,

476, 589 N.E.2d 1241 (1992)).  Plaintiff has the burden of establishing all four elements of an

intentional interference claim.  Plaintiff has failed to allege sufficient facts to establish the first

and third element of its claim.

First, Plaintiff alleges that it had an employment agreement containing a covenant not to

compete or solicit customers with Mr. Pallerla.  (Compl. ¶ 6.)  However, Plaintiff fails to attach a

copy of the alleged employment agreement and alleges no facts to support that a valid covenant

not to compete or to solicit customers exists between Plaintiff and Mr. Pallerla. As a matter of

law, a third party cannot be held liable for intentional interference with contractual relations or

prospective contractual relations on an invalid and unenforceable contract.

In *Teletronics, Inc. v. Downing,* No. 86-2465-Z, 1987 WL 9904 (D. Mass. Apr. 6, 1987),

the district court found that the non-competition agreement was unenforceable.  Since the non-

competition agreement was unenforceable, summary judgment was granted on plaintiff's tortious

interference claim.  The court concluded that since the non-competition agreement was

unenforceable, "plaintiff has alleged no wrongful act or means on the part of [the competitor]

which constituted the alleged interference with Teletronics' relationship with [the employee]."
*Id.* at *4. Without a valid, enforceable restrictive covenant agreement, Plaintiff's claim for
intentional interference with contractual relations must be dismissed as a matter of law. Plaintiff
has failed to attach a copy of the employment agreement between Plaintiff and Mr. Pallerla that
allegedly contains a non-competition provision. Moreover, Plaintiff failed to provide a copy to
Defendant in the months leading up to this litigation. Because Plaintiff's Complaint fails to
assert facts sufficient to establish an enforceable non-competition agreement, Defendant is
entitled to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff further fails to present any evidence that Defendant intentionally interfered with
the alleged contract between Plaintiff and Mr. Pallerla and that Defendant did so with "improper
motive or means." *See Wright,* 589 N.E.2d at 1245-1246. Plaintiff alleges that Defendant
"knowingly and deliberately interfered with TalentBurst's contractual and advantageous
employment relationship with Mr. Pallerla. . . ." (Compl. ¶ 14.) This is merely a conclusory
statement. Plaintiff fails to allege any facts or evidence of any improper means or method on the
part of Defendant to allegedly intentionally interfere with Plaintiff's contract with Mr. Pallerla.
The Appeals Court of Massachusetts has repeatedly stated that evidence of improper purpose or
improper means is necessary to establish a tortious interference claim.

> Tortious interference has become the "tort du jour" in the world of
> commercial litigation; that increases the importance of
> distinguishing truly inappropriate behavior for which there should
> be a remedy from normal competitive behavior permissible in the
> marketplace. The judgment usually turns on whether the plaintiff
> succeeds in demonstrating that the defendant has acted with an
> improper motive or in an improper manner, and this case is no
> exception.
> . . .
>
> Because the defendant's purpose was the legitimate advancement
> of its own economic interest, that motive is not "improper" for

> purposes of a tortious interference claim. *See Hunneman Real*
> *Estate Corp. v. Norwood Realty, Inc.,* 54 Mass. App. Ct. 416, 428-
> 429, 765 N.E.2d 800 (2002).  That the plaintiff may have suffered
> a loss as a consequence of the defendant's pursuit of its own
> interest is a by-product of a competitive marketplace; it does not
> render the defendant's effort tortious.

*Pembrooke Country Club, Inc. v. Regency Savings Bank, F.S.B.,* 62 Mass App. Ct. 34, 815

N.E.2d 241, 245-46 (2004).  *See also United Truck Leasing Corp. v. Geltman,* 406 Mass. 811,

551 N.E.2d 20, 23 (1990) (improper motive or improper means must be established in order to

prove a cause of action for intentional interference with contract or prospective contractual

relationship); *Hunneman Real Estate Corp. v. The Norwood Realty, Inc.,* 54 Mass App. Ct. 416,

765 N.E.2d 800, 808-09 (2002) (lack of evidence to support that defendant's conduct interfered

with another party's contract).

In *Coworx Staffing Services v. Coleman,* C.A. No. 2005-436-F, 2007 WL 738913 (Mass.

Super. Feb. 7, 2007), the Superior Court of Massachusetts refused to find a violation of

intentional interference with advantageous business relations.  In analyzing the evidence, the

Superior Court noted:

> [Defendant] contends that [plaintiff] has failed to identify or allege
> any intentional acts of encouragement to establish the third
> element of its claim. . . . In examining the facts in the light most
> favorable to the non-moving party, [plaintiff], this Court finds that
> [plaintiff] has not alleged any facts that can be construed as
> intentional acts by [defendant] either to urge Coleman to breach
> her non-compete agreement or to encourage her to use confidential
> information to solicit [plaintiff's] customers.

*Id.* at *4.

In this case, Plaintiff alleges that Defendant continues to employ Mr. Pallerla at the end

client in violation of the alleged non-compete provision in the employment agreement entered

between Plaintiff and Mr. Pallerla.  (Compl. ¶ 15.)  Plaintiff fails to allege any conduct on the

7

part of any representative of Defendant that could possibly rise to the level of "improper" motive or means.  In fact, Plaintiff fails to plead any facts concerning how or by what means Defendant allegedly interfered with Plaintiff's contractual relations with Mr. Pallerla.  Because Plaintiff fails to allege facts required in the third element of a tortious interference with contractual or advantageous relations claim, Plaintiff fails to assert a cause of action upon which relief can be granted, and Defendant is entitled to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**C.     Count III – G.L. Chapter 93A**

Plaintiff's third cause of action against Defendant is for violation of G.L. Chapter 93A alleging that Defendant engaged in unfair and deceptive trade practices.  (Compl. ¶ 36.) Defendant is entitled to dismissal of Count III of the Complaint on the grounds that Massachusetts' unfair trade practices statute is inapplicable in the employment context and Plaintiff's allegations of deceptive trade practices stem from Defendant's alleged interference with Plaintiff's employment relationship with Mr. Pallerla.

In *Informix v. Rennell,* 41 Mass. App. 161, 668 N.E.2d 1351 (1996), the Appeals Court of Massachusetts reviewed the applicability of G.L. Chapter 93A in the employment context.  The case dealt with allegations of the defendant's violation of certain confidentiality and non-competition provisions contained in a confidentiality agreement.  The Appeals Court of Massachusetts stated in part:

> It is firmly established that disputes between employers and employees fall outside the scope of § 11.  *Second Boston Corp. v. Smith,* 377 Mass. 918 (1979); *Manning v. Zuckerman,* 388 Mass. 8, 14, 444 N.E.2d 1262 (1983); *Weeks v. Harbor National Bank,* 388 Mass. 141, 144, 445 N.E.2d 605 (1983).  Employment agreements between an employee and his employer do not constitute either "trade" or "commerce."  "Disputes arising from an employment relationship between an employee and the organization that

> employs him . . . are not covered by the c. 93A remedies afforded
> in commercial transactions . . . . Contract disputes between an
> employer and an employee . . . are principally 'private in nature'
> and do not occur in the ordinary "conduct of any trade or business'"
> as contemplated by the statute." *Manning, supra* at 14.

*Informix,* 668 N.E.2d at 1353. The Appeals Court of Massachusetts further noted that

Chapter 93A was inapplicable regardless of whether the employee was still employed with the

employer or was a former employee. "That [plaintiff] could assert a right to control in specific

respects [defendant's] postemployment work activities arose from and was based solely upon the

confidentiality agreement entered into as part of the employment relationship." *Id.* (Citations

omitted.)

   The Superior Court of Massachusetts, at Middlesex relied on the Appeals Court of

Massachusetts' decision in *Informix* in finding that Chapter 93A is inapplicable in the

employment context against a former employee's new employer. *See Intertek Testing Services*

*N.A., Inc. v. Curtis-Straus LLC, et al.,* No. 98903F, 2000 WL 1473126 (Mass. Super. Aug. 8,

2000). The Superior Court found that the defendant was entitled to summary judgment on the

Chapter 93A claim on the grounds that Chapter 93A is inapplicable in the employment context.

> Employment agreements between an employee and his employer
> do not constitute either "trade" or "commerce." Disputes arising
> from an employment relationship between an employee and the
> organization that employs him . . . are not covered by the c.93A
> remedies afforded in commercial transactions . . . Contract disputes
> between an employer and an employee . . . are principally 'private
> in nature' and do not occur in the ordinary 'conduct of any trade or
> business' as contemplated by the statute."
>
> *Id. at a163,* quoting *Manning v. Zuckerman,* 388 Mass. 8, 14, 444
> N.E.2d 1262 (1983). *See also Second Boston Corp. v. Smith,* 377
> Mass. 918 (1979) (claims by an employer against his employee for
> breach of duty as an employee are not within the scope of G.L.c.
> 93A). If the actual willful breach of a non-compete agreement by
> an employee is not actionable under c. 93A because the claim
> arose from the employment relationship, then the conduct of a

third party to induce such a breach must also not be actionable
because this claim, too, arose from the employment relationship.
This is especially so here, where the critical issue in determining
whether Curtis-Straus induced such a breach is whether the non-
compete agreements themselves are enforceable.  Phrased
differently, since "employment agreements between an employee
and his employer do not constitute either 'trade' or 'commerce,'
degrees" *Informix, Inc. v. Rennell,* 41 Mass. App. Ct. at 163, and
the breach of employment agreements is also  neither "trade" nor
"commerce," then inducing the breach of employment agreements
must also not constitute "trade or "commerce."

Courts have wisely interpreted the legislative intent in enacting
c. 93A to exclude disputes arising out of the employment
relationship, and that wisdom is clearly seen with respect to the
enforcement of non-compete agreements. *See Manning v.
Zuckerman,* 388 Mass. at 12-13.

*Intertek Testing Services,* at *11.  The Superior Court of Massachusetts further noted that the

rationale behind Chapter 93A's inapplicability in the employment context is so that new

employers are not subject to unfair trade practices merely by hiring someone who may or may

not be subject to an enforceable non-compete agreement.

If c. 93A applied to these disputes, with its provision for treble
damages and the allowance of attorneys fees, the delicate,
uncertain balance that presently applies to these cases would be
dramatically altered.  A competitor who is contemplating hiring an
employee with a non-compete agreement may find the financial
risk of litigation so great that such employees may effectively be
unable to find work in their field, regardless of the reasonableness
of their non-compete agreement.

*Intertek Testing Services,* at *11.  *See also Coworx Staffing Services,* 2005436F, 2007 WL

738913 at * 3-4  (Chapter 93A does not apply to disputes arising from the employment

relationship; plaintiff's allegations that defendants induced former employee to breach her non-

compete agreement with plaintiff arises out of the employment relationship)(*relying on Intertek

Testing Services, supra,* and *Ocean Air Inc. v. Katzman,* No. 003343BLS, 2002 WL 532475

(Mass. Super. Jan. 22, 2002) (former employer could not sue its former employee's current

employer for a willful breach of a non-compete under Chapter 93A because the claim arose from the employment relationship.)

Plaintiff's allegations in Count III of the Complaint against Defendant for alleged violation of Chapter 93A are similar to the facts in *Intertek Testing Services, Ocean Air Inc.,* and *Coworx Staffing Services.* Plaintiff alleges that Defendant's alleged unfair trade practices stem from its interference with a covenant not to compete or to solicit customers agreement entered between Plaintiff and Mr. Pallerla (Plaintiff's former employee). (Compl. ¶¶ 10-14.) Defendant's alleged unlawful conduct stems from the employment relationship between Plaintiff and Mr. Pallerla. Therefore, Chapter 93A, § 11 is inapplicable in this case, and Defendant is entitled to dismissal of Count III of the Complaint as a matter of law.

In *Coworx Staffing Services,* the Superior Court of Massachusetts noted two minority view opinions that applied Chapter 93A in *Professional Staffing Group v. Champigny,* No. 04852A, 2004 WL 3120093 (Mass. Super. Nov. 18, 2004) and *Juncker Associates v. Enes.,* No. 00-2098-C, 2002 WL 31104013 (Mass. Super. September 5, 2002). *See Coworx,* 2007 WL 738913 at * 4. *Professional Staffing Group* and *Juncker Associates* are distinguishable from the present case and the facts in *Coworx, Ocean Air,* and *Informix,* and those cases are inapplicable here. First, neither case deals with the situation of a third party's alleged interference with a non-compete agreement—facts identical to those set out in the *Informix* decision. In *Juncker Associates,* the plaintiff brought an action against a former employee for violation of Chapter 93A and civil conspiracy. The former employee in the *Juncker* case had been competing against his current employer (the plaintiff) during his employment, had set up a separate competing business of his own that he operated out of his home, and lied about the nature and purpose of the business that was competing against the plaintiff. These facts are distinguishable from the

facts in this case. In *Professional Staffing Group,* the Superior Court found Chapter 93A applicable and refused to follow the Court of Appeals decision in *Informix*, finding that the dispute between the plaintiff and the defendant occurred well after the completion of the employment relationship, involved activity in the open marketplace, and was outside the confounds of the employment relationship, thus impacting "trade or commerce." *Professional Staffing Group,* 2004 WL 3120093 *3.[1] The *Professional Staffing Group* case is clearly distinguishable from the facts in the current case where Plaintiff's only allegation of alleged improper conduct against Defendant stems from Defendant's continuing to place former employee Mr. Pallerla with an end client allegedly in violation of a non-compete agreement arising out of Plaintiff and Mr. Pallerla's employment relationship. (Compl. ¶ 15.) Defendant's alleged conduct set forth in the Complaint had no impact on trade or commerce.

Count III of the Complaint clearly arises out of the employment relationship between Plaintiff and Mr. Pallerla and, therefore, Chapter 93A is inapplicable to Defendant's alleged conduct as a matter of law, and Defendant is entitled to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III. CONCLUSION

For the reasons set forth above, Plaintiff has failed to assert a claim upon which relief can be granted on Count I (breach of fiduciary duty), Count II (tortious interference) and Count III (violation of G.L. Chapter 93A) of the Complaint. For these reasons, Defendant's motion to dismiss should be granted pursuant to Rule 12(b)(b)(6) of the Federal Rules of Civil Procedure.

---

[1] Moreover, the superior court's decision is based on its refusal to follow Court of Appeal's precedent in *Informix*. For this reason alone, the *Professional Staffing Group* case should be disregarded.

Respectfully submitted,

COLLABERA INC.

By its attorneys,


/s/ Scott J. Connolly
Robert M. Shea, BBO #556356
Scott J. Connolly, BBO # 651007
MORSE, BARNES-BROWN
& PENDLETON, P.C.
Reservoir Place
1601 Trapelo Road
Waltham, MA 02451
(781) 622-5930


Dated: June 4, 2008


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants on June 4, 2008.


/s/ Scott J. Connolly
Scott J. Connolly


6380207.1 (OGLETREE)


13